**IN THE COURT OF APPEALS OF IOWA**
No. 17-0070
Filed May 3, 2017

**IN THE INTEREST OF J.R.,**
**Minor Child,**

**A.J., Mother,**
        Appellant.

_____

        Appeal from the Iowa District Court for Linn County, Susan F. Flaherty,
Associate Juvenile Judge.

        A mother appeals from the order terminating her parental rights.
**AFFIRMED.**

        Melody J. Butz of Butz Law Offices, P.C., Center Point, for appellant
mother.

        Thomas J. Miller, Attorney General, and Kristi A. Traynor, Assistant
Attorney General, for appellee State.

        Ellen R. Ramsey-Kacena, Cedar Rapids, for minor child.

        Considered by Danilson, C.J., and Potterfield and Bower, JJ.

**BOWER, Judge.**

A mother appeals the order terminating her parental rights.[1]  She claims the State did not make reasonable efforts toward reunification, the evidence was not sufficient to terminate her parental rights, and termination is not in the child's best interests.  We find the State did make reasonable efforts toward reunification, the evidence to support termination was sufficient, and termination is in the child's best interests.  We affirm.

## I.  Background Facts and Proceedings

J.R. was born in December 2005.  The Iowa Department of Human Services (DHS) became involved with the family in January 2007, due to the condition of the mother's house.  J.R. and his half-siblings were removed from the home.  J.R. was adjudicated a child in need of assistance (CINA) on January 22.  The mother was able to secure a suitable living arrangement in early 2008 and the children were returned in February.  However, the children were once again removed in October, again due to the condition of the house. J.R. and his half-siblings were eventually placed with K.C., J.R.'s legal father.[2]

The mother maintained a bond with the children and was granted visitation.  However, she continued to struggle to maintain proper and suitable housing.  During the case she has had extended periods of homelessness, including during the fall of 2016 when she lived in her van with her boyfriend and two dogs.

---

[1] J.R.'s legal father is not involved in this appeal.
[2] J.R.'s biological father's rights were terminated in 2009.  K.C. is J.R.'s legal father by virtue of his marriage to J.R.'s mother at the time of J.R.'s birth.

In 2014, J.R. was the only child still living with K.C. K.C. and his girlfriend ended their relationship, and K.C. moved with J.R. to a camper. J.R. was allowed by K.C. to live with the father's friends, and has been in their care continuously since May 2015. The State filed an application to modify disposition. K.C. was allowed time to attempt to establish appropriate living conditions. However, on February 8, 2016, J.R.'s legal custody was placed with DHS for foster family care with the father's friends.

The mother secured housing approximately two months before trial. However, the property had not been examined by DHS, the mother was not included on the lease, and DHS had not investigated the background of the friend the mother lives with. The mother has a history of involvement with unsafe individuals, including sex offenders.

A termination hearing was held on December 19, 2016. The mother's parental rights were terminated on December 30. She now appeals.

## II. Standard of Review

The standard of review is de novo in termination cases. *In re D.W.*, 791 N.W.2d 703, 706 (Iowa 2010). Clear and convincing evidence is needed to establish the grounds for termination. *In re J.E.*, 723 N.W.2d 793, 798 (Iowa 2006). Where there is clear and convincing evidence, there is no serious or substantial doubt about the correctness of the conclusion drawn from the evidence. *In re D.D.*, 653 N.W.2d 359, 361 (Iowa 2002). We give weight to the juvenile court's findings of fact, but are not bound by them. *In re C.B.*, 611 N.W.2d 489, 492 (Iowa 2000). The highest concern in termination proceedings is the best interests of the children. *In re L.L.*, 459 N.W.2d 489, 493 (Iowa 1990).

### III. Reasonable Efforts

The mother claims reasonable efforts towards reunification were not made by the State. Prior to the termination of parental rights reasonable efforts to reunite the parent and child are required to be made by the State. *In re T.C.*, 522 N.W.2d 106, 108 (Iowa Ct. App. 1994). However, if the parents are dissatisfied with the services, the parents are required to challenge the reasonableness of the services and efforts of the State prior to the termination hearing. *See In re C.D.*, 508 N.W.2d 97, 101 (Iowa Ct. App. 1993).

The mother claims the progression of the case was impaired by the continual change of DHS caseworkers and service providers and the failure of DHS to advance the quantity and quality of visitation. She notes there were "at least four different DHS caseworkers and four different service providers." The change in personnel is not surprising given this case played out over nine years. Additionally, the mother points out she was living in the same home for more than a year and was not allowed unsupervised visits and was only able to progress to semi-supervised visits in the community shortly before the termination hearing.

Throughout the entire length of the case, the juvenile court made repeated and consistent findings the State was making reasonable efforts toward reunification. On March 20, 2007, the juvenile court did find reasonable efforts had not been made as DHS could not locate a service provider. However, this defect was addressed and the juvenile court continued to determine reasonable efforts were being made up to October 13, 2016, in the final permanency review order. Finally, the mother did request increased visitation, but the juvenile court

found her "request for additional visitation was not supported by [the mother's] ongoing circumstances and actions." The mother did not challenge this ruling. We agree with the juvenile court and find the State made reasonable efforts.

## IV. Sufficiency of the Evidence

The mother also claims the evidence was insufficient to terminate her parental rights pursuant to Iowa Code section 232.116(1)(f) (2016). In order to terminate parental rights under section 232.116(1)(f), (1) the child must be four years old or older, (2) the child must have been adjudicated in need of assistance, (3) the child must have been removed from the home for at least twelve of the last eighteen months, or for the last twelve consecutive months with any period at home being less than thirty days, and (4) the child cannot be returned to the home as provided in section 232.102.

The mother claims the child could have been returned to the home at the time of the termination hearing. However, the mother had only recently obtained suitable housing at the time of the hearing, the home had not been evaluated by DHS, and the friend the mother lives with had also not been evaluated by DHS. While the mother has made progress in addressing some issues, her efforts "are simply too late." *See C.B.*, 611 N.W.2d at 495. Changes "in the two or three months before the termination hearing, in light of the preceding . . . months, are insufficient" for us to find real and lasting change has taken place. See *id.* Additionally, the mother has a long history of finding appropriate housing but failing to maintain it at acceptable levels of cleanliness or failing to pay rent. We find her current living situation has not been sustained long enough to show she

is able to maintain it. We agree with the juvenile court and find the child was not able to be returned to the mother at the time of the termination hearing.

## V. Best Interests

Finally, the mother claims termination is not in the best interests of J.R. After finding a ground for termination exists we are to "consider the factors under section 232.116(2). Section 232.116(2) requires us to give primary consideration to the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional condition and needs of the child." *In re P.L.*, 778 N.W.2d 33, 40 (Iowa 2010) (internal quotation marks and citations omitted).

When J.R. was first removed from the mother he was in the third percentile for height and appeared to be developmentally delayed. J.R. had also been diagnosed with attention-deficit/hyperactivity disorder and Asperger Syndrome. J.R. has shown growth and has been able to develop while placed outside of the mother's home. Testimony showed J.R. was concerned about his own stability and permanency. J.R. also stated he enjoyed living with the foster family. The foster family indicated they would allow J.R. to maintain contact with both parents in order preserve his bond with them. J.R.'s service provider and guardian ad litem agreed the mother's rights should be terminated.

The mother has had nearly a decade of services provided to allow her to resume care of the child and has not improved. Her housing situation has been chronically unstable, unsanitary, and unacceptable. We refuse to ask the child to wait for a parent to become stable, especially when past behavior indicates the parent is unwilling or unable to change. *See D.W.*, 791 N.W.2d at 707. J.R. has

done well in the current placement. We will not deny the child the opportunity to have a stable, nurturing, and safe environment, especially when the current placement clearly offers the opportunity. We find termination is in the child's best interests.

**AFFIRMED.**